319-0564 Chicago Land Trust Company appellee v. Village of Bollingbrook appellant. I've got to see, are you seeing video of the attorneys? Yes. You are. Yeah, we started. Judge Holdren, are you in gallery view? Pardon? Are you in gallery view? I will be if I can get to it here. I was able to see whoever speaks. Let's see who you got here on gallery view. There we are. Perfect, perfect, okay. Mr. Wilder, are you ready to proceed? I am. Please do so. Thank you, Your Honor. Good afternoon, Your Honors. Robert Wilder on behalf of the appellant at Village of Bollingbrook. May it please the court, counsel for plaintiff, the most important point that I want to make today is this. I do not mean to suggest that plaintiff could never obtain preliminary injunctive relief in this case, only that the manner in which plaintiff sought and was granted preliminary injunctive relief was completely improper under these circumstances. In order to understand why that is the case, it's helpful to review the procedural history that led to plaintiff's motion for preliminary injunctive relief, which he styled as a motion to stay. In December 2015, plaintiff sued Will County seeking mandamus in an effort to force Will County to issue a variance so that plaintiff could obtain a building permit to construct a pole barn on his property. The village intervened in that lawsuit, and several months later, the village annexed plaintiff's property after having annexed Commonwealth Edison property. We're familiar with that case, but my question is, what's the underlying action? How is it captioned and styled? What was the relief asked for? In plaintiff's case against Will County, it was styled as mandamus in declaratory relief. And then the village intervened in that. But they intervened in objection to the variance, is that correct? Correct. Okay, but the underlying suit and the suit presently all is trying to request a variance to put up a pole barn, is that correct? Correct, but then there was another complaint that was filed after the village annexed Commonwealth Edison property and then annexed plaintiff's property. Plaintiff was given leave to file a qualoranto action against the village. That's in another action, is that correct? Well, it was combined into this action. Okay, and that was basically subject to an earlier appeal, correct? Correct. And so that portion of the complaint was already decided, is that correct? Correct. Okay, so it's not presently before the trial court, should it be? It's the village's position that it is a closed case and that there was a judgment entered and that it is not or was not. What about the motion and the underlying action? How was it captioned, the one that's before us today? Motion in the underlying action was captioned plaintiff, I mean, initially it's directed against Will County and against the village. It's entitled plaintiff's motion for entry of an order on Will County to issue a building permit to plaintiff and to stay the village of Bowenbrook on force annexing the plaintiff's property until the court has ruled in this case. Okay, so when did the court rule? The court ruled on this motion on September 24th, 2019. And they granted the relief of a variance for the pole barn? Yes, well, yes, they did, it did. Okay, I mean, I'm just trying a simple guide, trying to figure out simple facts, so that basically the relief was granted by the trial court, correct? Correct, and there was an injunction entered against the village from proceeding with its annexation procedure. Well, how could it do? I have a question for you, and this is what's confusing me. The caption of the complaint says, we want to stay until, until. Does the word until in the caption mean anything? Yes, until the court has ruled in this case. And they ruled in that case, didn't they? They ruled, formally ruled on September 24th, 2019. In which case? Well, it's really the case against Will County, the mandamus case against Will County. Do you think that's important? I think it's absolutely important. That was actually my main point in opposing this motion. You know, I moved to strike this motion because there is no complaint pending against the village. Which motion did you move to strike? I moved to strike plaintiff's motion for entry of an order to issue, for Will County to issue a building permit and for the request for an order staying the village of Bolingbrook to, and joining them from annexing plaintiff's property. And really, I'm just focused on the aspect of the village. Well, maybe I'm misunderstanding this, but it seemed like the plaintiffs asked for a stay until the underlying action was decided. And that being, I think, a variance to erect a pole barn. And that's correct. And that's one of the problems. And was that decided? It was decided simultaneously. And it should, I should note that on September 4th, when plaintiff presented his motion, this motion, this two-part motion, and set a briefing schedule on it, the court, the lower court stated verbally what its ruling would be. So there was a verbal understanding as to what the ruling would be. And Judge Rickman stated that he would write up an order and that it would take him some time to do that. Yeah. See, I think maybe you're really putting this all together and stirring two things up, trying to make something out of it. Now, this would be the plaintiff's to answer whether I'm wrong on this, but it was a Isn't that conditional? Until? Until? It is. So was that, so when the court ruled on the variance, granting the variance, which you said is what they did do, right? Correct. Well, then the stay should by its very terms have disappeared into the ether, right? That was the motion, but you know, the order that was entered by the lower court was not conditional. It was until the appellate court refused this order. Which order? The order enjoining, the order of September 24th, 2019, enjoining the village from proceeding with its annexation. They were enjoined from proceeding with it until the appellate court reviews the order. So it was a permanent injunction. It was more than the plaintiff even asked for. Okay. There are many, many procedural infirmities in this case, Judge, and it's really a procedural argument that I'm making, which is that there was no complaint against the village. The village was brought in on this motion. They were an intervener. I should add that if I haven't added that already. It intervened into this action, and so we received notice of this. We went to court, we asked for a briefing schedule, and I told the court that I intended to strike this motion because as a motion for preliminary injunction, it's just one sentence, and it summarizes the elements that a party needs to demonstrate in order to obtain preliminary injunctive relief, and that's not an adequate motion for preliminary injunction. There needs to be a complaint that seeks injunctive relief, and then there needs to be a motion with reasoning and citation to case law that explains why this extraordinary relief should be granted to a party, and I explained to the court that there is no complaint pending against the village, and therefore it's really impossible for an injunction to enter against the village, so I stated a thumbnail sketch of my argument on September 4th, and the judge entered an expedited briefing schedule because the village had scheduled a hearing on related to the annexation of Plaintiff's property, and that was going to be on September 24th, 2019, so there was an expedited briefing schedule. The village was given a week to respond, and Plaintiff was given a week to reply. I moved to strike this motion because it's an improper motion procedurally for a lot of reasons. There is no complaint, and substantively, there's no substance to it whatsoever. Well, is there any prohibition by the Plaintiffs to file a separate complaint seeking to enjoin that action Paul Ingrup had given notice of to the Plaintiff? It was my position, and I have taken the position that Plaintiff was required to do so and could have done so. He could have filed a new Paul Luranto action against the village and making, you know, updating what had been previously filed and starting a fresh new complaint because there were new facts underlying the annexation agreement, but that was never done. It should have been done, and it could have been done, and it could have been joined into, just like it was done previously, it could have been joined into this mandamus action against Will County, but it wasn't done, so there was no complaint seeking injunctive relief on file against the village upon which Plaintiff could obtain a preliminary injunction. That is a significant obstacle disregarding the fact that there is no substance to the motion. It really is literally, I have it here, and it's three pages long, and it's only in one paragraph, and it says, Plaintiff's property rights are in need of protection, and there is a likelihood of Plaintiffs succeeding on the merits of the underlying case, and the Plaintiff will suffer irreparable harm in the absence of the issuance of a stay of the property, and the Plaintiff has no other adequate remedy at law. So by stating those elements, it's an acknowledgment. This is a preliminary injunction. So anyway, I had no choice. I couldn't respond substantively to this motion. I couldn't say, well, look, Plaintiff is wrong here. He's made a lot of incorrect arguments, and he has a remedy at law. So your position in a nutshell is Plaintiff's was seeking injunctive relief without having to file a separate complaint. Correct. I've also asserted in my briefing that the Plaintiff could have added a count to, because we were an intervener, he could have added a count to his existing complaint against Will County, and that count could have sought injunctive relief against the Village and stated the facts in support thereof. But that was not done. This was all done on a hurried timetable. I think that inappropriately and incorrectly, and a lot of procedural shortcuts were taken that caused the Village to not be able to substantively ever respond to any substantive arguments made by the Plaintiff about why he is entitled to preliminary injunction. So I was not able to do that. I had no choice when I was confronted with this motion, but to move to because there's nothing, there's no substance to respond to. Now after I filed my motion to strike, Plaintiff filed a response to my motion to strike. When he filed that motion, or the response to my motion to strike, he put some substance into his arguments, but that's not appropriate. It's an opportunity for Plaintiff to defend what is being challenged. I'm challenging the procedural infirmities about it, and he doesn't respond to that. Instead, he starts to make his arguments for the first time about why he's entitled to preliminary injunctive relief, and that's totally inappropriate. Now we have a situation where he files a motion that contains one sentence against the Village. I filed a motion to strike it, and now he has filed what really becomes his motion for preliminary injunction, and I have no response to that. And then we have a fully anticipated that the lower court would strike the motion to stay because it's totally inappropriate, and I expected that, and we talked about it, and the lower court denied it. This is not a proper motion for preliminary injunction for all the reasons that I've stated. And it could have been done. There's no question at all that it could have been done, and when I a pretty good motion for preliminary injunction, but this is not the time or the place to do it. It should have been done in the court below, and things would have been briefed properly, and all of the legal arguments would have been raised. We would have had a proper discussion about the merits of enjoining the Village from doing what is a legally authorized act, an extrajudicial legally authorized act, and it was done accordance to the law. Plaintiff, of course, asserts that it's contrary to the ruling that this court issued in 2018, and we disagree with that, but it is otherwise lawful. It's a lawful authorized extrajudicial act. It can't be stayed. Stay is referred to things that are done in judicial actions. Plaintiff refers to it as a collateral attack. Again, that's a judicial concept. That's something that's done in the process of litigation. What we have here, Judge, is a lawful act that was enjoined without any complaint. At the time that the Appalachians filed their motion seeking to enjoin, it was prior to the ruling on the underlying zoning case. It was in June, correct? The underlying... The issues about Will County were briefed, and there was a long delay in getting a ruling on that. When it came to plaintiff's attention that the Village was going to move forward again with a different annexation agreement as to ComEd, plaintiff filed this motion to alert Judge admittedly. So it hadn't happened yet at that time. It had not happened at that time. So the action pending at that time was still the zoning matter. Correct. And at that time, the court, and when this motion was filed, August 28, 2019, the court had not ruled that plaintiff was entitled to a variance or a building permit. Thank you. Okay. Any other questions for Mr. Wilder at this stage? No? Okay. Mr. Wilder, you have time and reply. Thank you. Yes, sir. Mr. Martin, you may respond. Thank you very much, Your Honor. Michael J. Martin for the Appelese. The Appelese is basically one individual, I think this came out in James 1, his name is Ed James. He's a former car dealer, Chevrolet dealer in the Village of Bolingbrook. And he's owned the property, which is the subject of this lawsuit since 1989. Actually, it's been zoned since 1979, I-2 in the county. And what happened after James 1, which was the appeal, I went into the trial court and it was a complaint for declaratory judgment and mandamus. And I renewed the motion for judgment on the pleadings that I had filed back in May of 2016. And Bolingbrook, and I believe this is part of the record in this case, has been a party to that lawsuit since January of 2016, when it intervened. So it intervened, and it's the same status as Will County, it's a defendant, and it had a right to intervene. And what happened before is, while I was trying to proceed on that motion, Bolingbrook then forced annexed this property, unbeknownst, basically, to us and didn't give the notices it was required. But what it did was then take the jurisdiction away from the circuit court to consider the mandamus and the request for the variance. And so when I- Are we back to the original lawsuit, Mr. Martin? Are you discussing the- Yeah, that was just basically the original lawsuit. Just wanted to give a little background. Yeah, well, that's been decided, right? The original, yeah. That's correct. But what happened in this case is an attempt at a repeat of what happened in the first case. I renewed my motion for judgment on the pleadings. And if you understand this variance, the variance was for frontage on the frontage highway to I-55. And what we had was 60 feet of frontage, which the property always had, and the county said we needed 80 feet. And the problem with that is we had 80 feet at the building setback line as required by the county ordinances. So, in fact, we had 128 feet. So I think it was clear that the variance should have never been required and should have been granted. And while we're arguing that, the village of Bolingbrook basically is attempting to renew the same, what I can only describe as an end run around the jurisdiction of the trial court, and put us back you know, filing a quorum ronto, going through the whole motions of that. When we already have a case in which Bolingbrook is a party, it's clear that they've been a party since 2016. And I filed a motion for a stay, because I thought when I looked at what Bolingbrook did, it was clear that they were collaterally attacking James 1. And, you know, Judge Rickman agreed to that. How are they prohibited from engaging in a voluntary annexation with different agreement with ComEd property? Well, they're involuntarily annexing me. And they're using, they are involuntarily annexing my client, and they are using ComEd 2 annexation as a means to force annex my client, which they can't do, as in the first case. What was the holding in the first case? That it was a sham, that it was a nullity, that a ComEd annexation. And what is your understanding that it was a nullity? Why was it a nullity? I mean, it's the holding of the case. Because of the activity of the Bolingbrook on two parts. One, there was no showing that the village, you know, that the ComEd wanted to annex this little small portion of its right-of-way. And basically, the activities of Bolingbrook in its annexation agreement, which allowed ComEd to come into the village, would actually not becoming a resident of the village, a taxpayer of the village, or any of those other aspects, was an improper inducement to ComEd to annex for the sole purpose. The sole purpose was... Okay, so now we're back down to the agreement, apparently, that led the majority, at least, to find it to be a sham transaction in the first case. That's correct. Okay, so now, when the ComEd annexation occurs, that's really relevant to this case, is it the same agreement? No. The agreement has changed only slightly. And for the changes, one is that there's no longer the condition precedence that they had written. But the motivation and the fact that it's a sham is very clear from the agreement. And I waited until I had the village's minutes from its meetings, where they tell you what they're doing. So if you look at the village's minutes, first, if you look at the detachment plat, which is recorded in the ordinance requiring the detachment plat, you read that and you say, well, look, this looks like sour grapes. The appellate court decided against us two to one with Justice Holdridge dissenting. And they made it clear that they felt and they said that they did everything legally and appropriate and proper. But we have to pass this detachment plat because we've been ordered to do so. So they record the detachment plat. And I stole them of the old school that's improper to call out appellate court justices or improper to call out decisions in that fashion in official minutes of board meetings passing ordinances. And then what happens as we go on and we didn't know about the comment forced or annexation agreement number two. But what happens is, is they then make this deal with ComEd and they annex ComEd. And again, there's no evidence that ComEd came to them and said, oh, we need to redo everything so we could be annexed. And the mayor of the village of Bolingbrook tells you in the official meetings that that isn't what happened. They went back to ComEd to redo an annexation agreement, which they thought would address what the appellate court said in James one, so we can force an X and the James property. And, and all of that is in all of their meeting minutes. And so they are on record saying that they're going back and they're engaging in the same type of activity, which this court found was a sham and nullified the first forced annexation. So that's what I put before the court. And, you know, I, it meets the elements of an injunction. And with all fairness to Mr. Wilder, when he filed his motion to strike in the record at 194, when he asked the court or the trial court for release, he not only asked to striking Pelanus reported motion to stay the village from annexing the property, or the alternative denying the motion is substantially insufficient. So his motion to strike is also a response to the motion to stay. And so my response to him is totally appropriate. My response in the briefs, because he offered two things to distinguish in his motion to strike James one for what now is changed to one is, well, we did a new annexation agreement. And here's, here's the annexation agreement. And as a result, that that should be the reason that the court should let us go forward. And this basically was not the same situation as James one. Well, it is the same situation as James one, this was going on, on the eve of the which was initiated by complaints by Mayor Claire of the village of Bolingbroke regarding my client's use of his property. And we're back again at the trial court level. And on the eve of that, the village is trying to force the next my client's property to remove my client's property from the jurisdiction of the trial court. I thought it to me, it's very, very clear that we shouldn't have to go through this again, when they've already been found to have these improper motives. And they're doing the same thing all over again. And I don't have to guess about it, because they're very blatant about it. They tell you it in their minutes of their public meetings. I think that's totally inappropriate from the for them to even do that. But they told us what they were doing. Mr. Martin, can I ask you a question? So some citizen business, whatever, wants to do something, but they got either a law or a court decision that they feel is in their way. So I mean, isn't that why they hire lawyers to say, well, let's see if we can work around this and make it make another run at it. I mean, that's why people hire lawyers. We don't want to put the Bar Association out of work. So that in and of itself is what the legal system is all about. And so the fact that they're trying to get around a prior decision from this court doesn't make them bad. Does it? No. The way that they did it was improper. It's the same activity as in the first case. Okay. Well, let me ask a question that's perhaps not onto the very issues. But in the context of this whole controversy, which you admit has been ongoing for quite some time, your client has achieved, apparently, but maybe correct me if I'm wrong, has obtained from the county, because it's still county jurisdiction property, I believe, they've received a variance to be able to put up a pulled building to apparently house cars or whatever that Mr. James collects or acquires. So has he achieved his objective? No, not totally, because I think the problem, and this goes into a part of the problem and why we still need to stay is the building permit was ordered issued. Now, presuming the next day, you change the jurisdiction, how do I build my building under county ordinances under the village of Bollingbrook? That's not going to happen. I have to build my building under the county ordinances of Will County, and then use my building. So I really don't have a secure situation until I have the building up. And until I have an occupancy permit. And what happened in this case is the building permit was ordered issued, but the county did not issue the permit until June 24 of this year. So we just got the permit in the middle of a pandemic. And we don't have the building started yet. But we have a year to start the building and we have a year to complete it and get the occupancy permit, which we believe we will have done. After that scenario, then, you know, it's a different fact situation. And I don't know what that would be if Bollingbrook was trying to force an excess at this time, I can't guess. Well, let me let me suggest and correct me again if I'm wrong, because I'm not practicing this area. But assuming arguendo, that the building has the proper permit, that it is built according to the Will County requirements. And ergo, without question is allowed an occupancy permit. If that's the procedure in Will County, some counties don't have that procedure. Assuming that it is subsequently forcibly annexed into the village of Bollingbrook, Bollingbrook, isn't it just considered a non conforming use and would not injure your, your, your client? That would be under their own ordinances, they allow for non conforming uses to continue, yes. But at the current point, the forced annexation, because we look at use, and my client's property, which is zoned I-2 and which allows the storage and would allow us outdoor storage is something that would not be allowed to continue because the forced annexation is going to zone my client's property as state residential. And that's part part in their ordinance. So we need to be in a use factor. Am I on the red button? If I finish up, if you would, please, we let up council do the the construction of our building, get our occupancy permit. And then we would be in a position where we would be able to go forward and whatever happens after that happens after that. I mean, Thank you. Thank you. Any questions from the Thank you. Any questions from the bench? No, no. Okay, thank you. Mr. Wilder, you may reply. Thank you, Your Honor. I can just do this very briefly. The point of this appeal is largely procedural. It is that you cannot walk into court and say, I'm entitled to an injunction. And that's all you need to hear about it. It's not an appropriate way to do it. Mr. Martin has talked about, well, this is the village is doing the exact same thing as it did decision in James one consults with its lawyers and decides, well, maybe we can do this a different way that conforms to the holding in James one. And let's try that because there's nothing wrong with trying it again in principle. And that is exactly what the village did. So it is not the same as James one, the James one decision, a significant part of the holding related to the comment could just opt out whenever they wanted to. And it had the look of an illusory annexation. That's gone. There's finality in this annexation. It has been annexed. It's a done deal and they can't- That wasn't the only findings from this court about- Of course, there were other aspects to the decision, no question. But that was, as I view it, and that's the tricky part of interpreting how to go about it the second way or a second way. One of them was that the village made the initiation of contact with ComEd. That can never be undone. That happened. That is not at all uncommon in annexations. But that is not- That standing alone could never be a reason not to nullify an annexation. It was all the other aspects of it. And many of those were fixed. The finality is a very significant aspect of it. There is zoning, which is another part of James one. The property was zoned after the second annexation agreement or as part of the second annexation agreement. And significantly more ComEd property was annexed in the second annexation. So to the extent that the first annexation had the appearance of something illusory because of the small parcels of land that were annexed, the lack of finality and the lack of zoning and so forth- Do they have to pay any village for any village services or taxes or any of the other things that other village- They do not. They do not. Nothing more than they had already been paying. But again, that standing alone is not sufficient to nullify an annexation. A tax incentive for a unincorporated property to become incorporated is not unique and it's not new and it's done all the time. But to the extent that the village could correct its approach to the annexation with ComEd, it did so. And it did definitely make it some cause of action, either joining it to the Will County or having it as a separate action. And it could have been done. You know, he's written a good appellate brief and if he had written that in the lower court and we had a fully briefed that as it was written, as that was the motion for preliminary injunctive relief, we wouldn't be here today because it would be procedurally appropriate. That wasn't done. There were a lot of shortcuts done. I was not- The village was not provided an opportunity to substantively respond, you know, just guessing what the arguments might be and hoping so. And I put that in my motion to strike. I think the lower court made a significant error in failing to strike this motion because it's not a proper motion. It doesn't have any place or any precedent under the law. There must be a complaint and it must have some substantive arguments. Okay. Any questions? No. Okay. Okay. Well, counsel, thank you both for your fine arguments in this matter this afternoon and for participating in the Zoom oral argument. These are different times and a written disposition will issue from this court. Thank you.